USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/16/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KENDALL MOTA, TRAVIS SUBARAN,
NATHANIEL EMILIA, HECTOR BRIGANTI, and
MICHAEL MIRANDA, in their individual capacities
and on behalf of others similarly situated,

                 Plaintiffs,

        -against-

ABALON EXTERMINATING COMPANY, INC.,
IRWIN NOVAL, an individual, and DOROTHY
GOMEZ FROST, and individual,

                 Defendants.

1:22-cv-7602 (MKV)

**OPINION AND ORDER
GRANTING DEFENDANTS'
MOTION TO DISMISS THE
AMENDED COMPLAINT**

---

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs are current and former employees of Abalon Exterminating Company, Inc. ("Abalon"). They brought this putative collective action against Abalon and its owners (together, "Defendants"), asserting claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), in addition to state common law claims of unjust enrichment and third-party beneficiary claims. In an August 2023 Order and Opinion, the Court granted in part and denied in part Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). Subsequently, and with leave of the Court, Plaintiffs filed an Amended Complaint. Defendants now move to dismiss the Amended Complaint, again pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, that motion is GRANTED in its entirety.

**BACKGROUND**[1]

The Court assumes familiarity with the facts of this case and its prior decision. *Mota v. Abalon Exterminating Co., Inc.*, No. 1:22-CV-7602 (MKV), 2023 WL 5211022, at *1 (S.D.N.Y. Aug. 14, 2023). The Court reviews only those facts relevant to the pending motion.

Plaintiffs each work or used to work as pest exterminators for Abalon, which is an extermination company owned by Irwin Noval and Dorothy Gomez Frost (together with Abalon, "Defendants"). AC ¶¶ 8, 13–16, 20–25, 27, 32, 36, 40, 54. Plaintiffs allege that Defendants often paid Plaintiffs late or with checks that bounced. AC ¶¶ 1, 70, 71, 81. When Plaintiffs ultimately received their checks, they were often not for the full amount owed. AC ¶¶ 2, 69, 75, 78, 79, 99. For instance, Defendants allegedly shortchanged Plaintiffs in connection with public works contracts, depriving them of the prevailing wages they were owed pursuant to those contracts. AC ¶¶ 1, 90–99. Defendants also purportedly denied Plaintiffs the time-and-a-half overtime rate required by law, even though Plaintiffs "regularly" worked over forty hours per week. AC ¶¶ 1, 2, 69, 71, 79. Plaintiffs allege that this was all done in bad faith, as evidenced by the fact that "Defendants would divide their hours into separate paychecks so that their check never reflected their accurate hours, in an attempt to avoid paying overtime." AC ¶¶ 2, 73–75.

In 2022, Plaintiffs commenced this action asserting numerous violations of the FLSA and NYLL, including claims of unpaid overtime wages, improper record keeping, and failure to pay wages at a prescribed frequency. [ECF No. 1 (the "Original Complaint") ¶¶ 65–86]. Plaintiffs also brought claims of breach of contract, unjust enrichment, and conversion in connection with Defendants' alleged failure to pay them prevailing wages, as required by the public works contracts

---

[1] The Court draws its facts from the Amended Complaint [ECF No. 49] ("AC"), the well-pleaded allegations of which are taken as true for the purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

to which they alleged they were third-party beneficiaries.  Original Compl. ¶¶ 87–103.  Defendants moved to partially dismiss the Original Complaint, arguing, *inter alia*, that: (1) the FLSA claims brought by Plaintiffs Subaran, Briganti, and Emilia were time barred; (2) Plaintiffs Mota and Miranda failed to state a claim for unpaid overtime wages under the FLSA; and (3) Plaintiffs' prevailing wage claims failed as they related to work performed on the New York Public Library, which is not an agency of city government.  [ECF Nos. 23–25].

In an Opinion and Order, the Court granted in part and denied in part Defendants' motion to dismiss the Original Complaint.  *Mota*, 2023 WL 5211022, at *1.  To summarize, the Court held the following:

- The Court DENIED Defendants' motion to dismiss the FLSA claims brought by Plaintiffs Briganti and Emilia as untimely, finding that Plaintiffs Briganti and Emilia adequately alleged facts that gave rise to a plausible inference that Defendants willfully violated the FLSA such that the three-year statute of limitations might apply.

- The Court GRANTED Defendants' motion to dismiss Plaintiff Subaran's claims under the FLSA as time barred.

- The Court DENIED Defendants' motion to dismiss the NYLL claims brought by Plaintiff Subaran, choosing to retain supplemental jurisdiction over Plaintiff Subaran's NYLL claims, subject to a longer six-year statute of limitations, because the claims arise out of the same compensation policies and practices of the same employer as the FLSA claims brought by the other Plaintiffs.

- The Court GRANTED Defendants' motion to dismiss with respect to all overtime claims brought by Plaintiffs Mota and Miranda, finding their allegations too vague and conclusory to allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours.

- The Court DENIED Defendants' motion to dismiss Plaintiffs' prevailing-wage related state law claims, finding it was premature to define the scope of the breach of contract claim, or to decide whether the work performed for certain third-party beneficiaries referenced in the complaint qualified as work performed on public works projects.

*Mota*, 2023 WL 5211022, at *3-*5.  Thereafter, with leave of the Court, Plaintiffs filed an Amended Complaint reasserting the same FLSA and NYLL violations, including claims of unpaid overtime wages, improper record keeping, and failure to pay wages at a prescribed frequency.  AC ¶¶ 68–89.  Plaintiffs also realleged breach of contract and unjust enrichment claims.  AC ¶¶ 90–99.  In addition, Plaintiffs now allege retaliation claims under both the FLSA and NYLL.  AC ¶¶ 100–12.  More specifically, Plaintiffs allege that since filing this action, Defendants have offered to rehire certain Plaintiffs on the condition that they sign documents releasing and dismissing their wage claims.  AC ¶¶ 100–12.  Defendants now move to dismiss the Amended Complaint again pursuant to Fed. R. Civ. P. 12(b)(6).  [ECF No. 51]; [ECF No. 52, Memorandum of Law in Support] ("Def. Br."); [ECF No. 55, Reply Memorandum of Law] ("Reply").  Plaintiffs oppose the motion.  [ECF No. 53] ("Pl. Opp.").

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  More specifically, Plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  The Court must " 'accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor.' "  *Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (quoting *Giunta v. Dingman*, 893 F.3d 73, 78–79 (2d Cir. 2018)).

## DISCUSSION

I.   **Plaintiffs' Amended Complaint Fails to Cure Time
     Barred and Deficiently Alleged FLSA Overtime Claims.**

### A.  *Plaintiff Subaran's FLSA Claims Remain Time Barred.*

The statute of limitations for FLSA claims is two years, or, if the FLSA violation was willful, three years.  29 U.S.C. § 255(a).  The Court previously dismissed Plaintiff Subaran's claims under the FLSA as time barred.  In so finding, the Court cited to Plaintiff Subaran's allegation that he last worked for Abalon on September 1, 2018.  *Mota*, 2023 WL 5211022, at *3 (citing [ECF No. 1 ¶ 38]).  The Court held that "[s]ince this matter was filed more than four years later, Subaran fails to state any timely FLSA claims even under the longer three-year statute of limitations."  *Mota*, 2023 WL 5211022, at *3.  The Amended Complaint similarly alleges that Plaintiff Subaran last worked for Abalon on September 1, 2018, *see* AC ¶ 40, and therefore, as the Court previously held, Plaintiff Subaran's claims under the FLSA are time barred.

### B.  *Plaintiffs' FLSA Overtime Claims
        Fail to Sufficiently Allege a Claim.*

Defendants next move to dismiss the FLSA overtime claims of the remaining plaintiffs, Plaintiffs Mota, Miranda, Briganti, and Emilia, for failure to state a claim.  Def. Mem. at 4.  The FLSA requires a regulated employer who "employ[s] any of his employees . . . for a workweek longer than forty hours" to compensate that employee "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Relying on the Second Circuit decision in *Lundy v. Catholic Health Systems of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ("*Lundy*"), this Court previously granted Defendants' motion to dismiss the FLSA overtime claims of Plaintiffs Mota and Miranda, finding that their allegations in the Original Complaint were too vague and conclusory to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours.  *Mota*, 2023 WL 5211022, at *3.  Specifically, the

Court held that Plaintiff failed to allege sufficient facts since they did not clearly allege "in which *year* these plaintiffs might have worked a week over forty hours, let alone any 'particular workweek(s) in which the plaintiff[s] suffered an overtime violation.' " *Id.* at \*4 (quoting *Ahmad v. Day*, No. 20-cv-4507, 2023 WL 3847144, at \*6 (S.D.N.Y. June 6, 2023)). Accordingly, the Court concluded that "[t]he allegations [were] boilerplate, and could apply to any number of workers, in any number of fields, in any given decade." *Mota*, 2023 WL 5211022, at \*4.

Defendants now contend that the minimal amendments made to the allegations of Plaintiffs Mota and Miranda in the Amended Complaint remain insufficient to state an FLSA overtime claim. Def. Mem. at 6. More specifically, Plaintiff Mota's amended pleading is identical to his first pleading except for a single new allegation, which cites one week in May 2019 where he alleges a split of regular and prevailing wage pay and deprivation of overtime, including a screenshot of his pay stubs. *See* AC ¶ 52. However, any claim arising from this new allegation is time barred under both the FLSA's two-year and three-year statute of limitations, as this action was commenced in September 2022. 29 U.S.C. § 255(a). With respect to Plaintiff Miranda's amended allegations, the only changes appear to be the use of new qualifying adjectives alleging now that he "consistently" instead of "typically" works more than forty hours per week, and "upon information and belief" his attorney believes his pay follows the same pattern as Mota's untimely pay stub allegation from May 2019. AC ¶¶ 47–48.

Additionally, although Defendants did not previously move to dismiss the FLSA overtime claims of Plaintiffs Briganti and Emilia for failure to state a claim,[2] Defendants now argue that

---

[2] Defendants' motion to dismiss the Original Complaint sought to dismiss the FLSA claims of Plaintiffs Briganti and Emilia exclusively on statute of limitations grounds. Def. Mem. at 5. The Court rejected Defendants' statute of limitations argument, finding that Plaintiffs Briganti and Emilia sufficiently "allege[d] facts at the pleadings stage that give rise to a plausible inference that a defendant willfully violated the FLSA for the three-year exception to apply." *Mota*, 2023 WL 5211022, at \*2 (quoting *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021)).

their allegations in the FAC are "essentially identical to those by the other plaintiffs which were [already] dismissed by the court . . . for failing to state a claim for unpaid overtime," and "their claims should also now be dismissed on that basis." Def. Mem. at 5. In particular, Defendants assert that Plaintiffs Briganti and Emilia "raise identical pleadings with the same vague language in both the original complaint . . . and the FAC . . . as to their 'estimates' of hours worked." Def. Mem. at 5 (citing AC ¶¶ 34, 38, 42). Plaintiffs counter that following the Court's ruling on Defendants' motion to dismiss the Original Complaint, the Second Circuit revisited the standard set forth in *Lundy* for FLSA overtime pleadings. Pl. Opp. at 3.

In *Lundy*, the Second Circuit instructed that "to survive a motion to dismiss [an FLSA overtime claim], Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours." 711 F.3d at 114. Accordingly, "to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work *in a given workweek* as well as some uncompensated time in excess of 40 hours." *Id*. (emphasis added). In light of this standard, the *Lundy* Court affirmed the dismissal of a plaintiff's FLSA overtime claims because, although she had pled that she "was '*typically*' scheduled to work three shifts per week, totaling 37.5 hours" and that "[s]he '*occasionally*' worked an additional 12.5-hour shift or worked a slightly longer shift," her complaint failed to allege "how occasionally or how long," or that she "was denied overtime pay in any such particular week." *Id*. at 114–15 (emphasis added). Similarly, the Second Circuit affirmed in *Lundy* the dismissal of a second plaintiff's FLSA overtime claims because, although she alleged that she worked enough shifts "approximately twice a month" to "total[] between 37.5 and 45 hours," she failed to "allege that she was denied overtime pay in a week where she worked" shifts exceeding the 40-hour bar. *Id*.

Following its decision in *Lundy*, in *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, the Second Circuit again affirmed the dismissal of plaintiffs' FLSA overtime claims after finding that the plaintiffs' generalized allegations that they "*regularly* worked hours both under and in excess of forty per week and were not paid for all those hours" failed to provide "sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty." *Nakahata*, 723 F.3d 192, 199 (2d Cir. 2013) (emphasis added). In so finding, the Second Circuit demanded that plaintiffs provide some degree of "specificity" in order to sufficiently plead an FLSA overtime claim. *Id*. at 200. Shortly thereafter, in *Dejesus v. HF Management Services, LLC*, the Second Circuit again found that the complaint in that case was too sparse to state an overtime claim under the FLSA. 726 F.3d 85, 89–90 (2d Cir. 2013). Although the *Dejesus* complaint alleged that the plaintiff worked more than forty hours per week in "some or all weeks," the Second Circuit determined that the allegation was "no more than [a] rephrasing [of] the FLSA's formulation" and thus insufficiently specific. *Id*. at 89.

Most recently—and following this Court's ruling on Defendants' motion to dismiss the Original Complaint—the Second Circuit once again "addressed the standard for pleading a plausible FLSA overtime claim" in *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 115–16 (2d Cir. 2023) ("*Herrera*"). In *Herrera*, the Second Circuit addressed "[w]hat level of specificity must a complaint allege with respect to the number of hours an employee worked in order to state a claim for unpaid overtime under the Fair Labor Standards Act (FLSA)[.]" *Id*. at 111. The Second Circuit declared that the "straightforward lesson" to be drawn from its decisions in *Lundy*, *Nakahata*, and *Dejesus* "is that plaintiffs must plead FLSA overtime claims with 'specificity.' " *Id*. at 115 (citing *Nakahata*, 723 F.3d at 200). In other words, "[i]t is not enough to allege that the

plaintiff worked in excess of forty hours 'in some or all workweeks.' " *Herrera*, 84 F.4th at 114. The *Herrera* Court went on to clarify that while "plaintiffs must sufficiently allege '40 hours of work *in a given workweek* as well as some uncompensated time in excess of the 40 hours' . . . Nothing more is required." 84 F.4th at 114 (citing *Lundy*, 711 F.3d at 114; *Dejesus*, 726 F.3d at 88) (emphasis added). That is, *Herrera* emphasized that plaintiffs need not "provide a week-by-week recounting of the hours they worked" or "keep 'careful records' of the hours they worked." *Id*. at 115.

Then, turning to the facts before it, the *Herrera* Court held that the complaint in that case was sufficiently specific to state an FLSA overtime claim under the "the standard established in *Nakahata*, *Lundy* and *Dejesus*." *Id*. at 115. In so finding, the Second Circuit noted that the complaint alleged "[p]laintiffs' *regularly* scheduled work hours consisted of five shifts *each week*, and that *each* shift lasted between eight and three-quarter hours and nine hours, amounting to between 43.75 hours and 45 hours of work per *regular week*." *Id*. (emphasis added). The complaint further alleged that plaintiffs' "early arrivals and late departures comprised approximately an additional five hours of work *per week* in excess of forty hours *per week*." *Id*. (emphasis added). All of this considered, the Second Circuit held that "[f]ar from simply 'repeat[ing] the language of the [FLSA],' the [p]laintiffs [] identified a period of time when they were employed to work more than forty hours per week as part of their regularly scheduled workweek[.]" *Id*. (quoting *Dejesus*, 726 F.3d at 89 & n.4) (internal citations omitted) (alterations in original). In other words, when taken as a whole, the allegations "carr[ied] the [p]laintiffs over the forty-hour bar" and created a plausible inference in support of their FLSA overtime claims without the need to cite any one specific workweek including unpaid overtime. *Id*. at 115–16.

Here, even post-*Herrera*, Plaintiffs' allegations fail to sufficiently plead their FLSA overtime claims with enough specificity to identify any period of time that they were employed to work more than forty hours per week.  Plaintiff Mota alleges that "[t]hough it varied," he "generally" worked "approximately 40-50 hours per week."  AC ¶ 29.  He further alleges that although he "typically" worked eight hours a day five days per week, "sometimes he would start earlier and/or stay later."  AC ¶ 29.  Plaintiff Miranda alleges that he "consistently works more than 40 hours a week" and "there are very few weeks when he was working less than 40 hours a week."  AC ¶ 47.  He further alleges that although "[h]is start times vary from day to day," he "typically" works six days per week and "typically" more than 8 hours each day.  AC ¶ 47.  Plaintiff Briganti alleges that "[t]hough it varied," he "estimates" that he "generally" worked "approximately 40-50 hours per week."  AC ¶ 38.  Finally, Plaintiff Emilia "estimates" that he "generally" worked "approximately 50 hours per week."  AC ¶ 34.

As a general rule, Plaintiffs' allegations that they "typically" or "generally" or even "consistently" worked in excess of 40 hours a week—while explicitly conceding that such "estimates" "varied"—are insufficient to satisfy the pleading standard in FLSA overtime cases. *Dejesus*, 726 F.3d at 89–90; *see also, e.g.*, *Ramirez v. Temin & Co., Inc.*, No. 20 CIV. 6258 (ER), 2021 WL 4392303, at *18 (S.D.N.Y. Sept. 24, 2021).  Such allegations are " 'borderline phrases' that while not stating an 'ultimate legal conclusion[],' [are] 'nevertheless so threadbare or speculative that [they] fail to cross the line between the conclusory and the factual.' "  *Dejesus*, 726 F.3d at 88–90.  Indeed, *Herrera* affirmed this reasoning, holding that the "pleading standard is *unmet* if all that plaintiffs allege is that at some *undefined* period in their employment, they worked more than forty hours in a single week."  84 F.4th at 114, 117 ("It is not enough to allege that the plaintiff worked in excess of forty hours 'in some or all workweeks.' "); *see*

*also DeJesus*, 726 F.3d at 87 (rejecting plaintiff's bare allegations of under-compensation when working in excess of forty hours during "some or all weeks" of employment). "Such an allegation would be far too vague and unhelpful for putting a defendant on notice of the alleged violation." *Herrera*, 84 F.4th at 117. And ultimately, such allegations are devoid of any "*particular* facts sufficient to raise a plausible inference of an FLSA overtime violation." *DeJesus*, 726 F.3d at 89 (emphasis added).

The pleading standard in an FLSA overtime case could be satisfied "if plaintiffs allege that their regularly scheduled workweek for a *given period of time* included more than forty hours of work, so that they were eligible for overtime during *every* week in which they worked their regular schedule." *Herrera*, 84 F.4th at 117. "In such an instance, all plaintiffs need allege is the period of time they were employed while working that regular schedule." *See id*.

Here, however, Plaintiffs' unequivocal and express allegations belie any such theory. Plaintiffs explicitly indicate, without any reference to time frame, that there were certain weeks when Plaintiffs did *not* work more than 40 hours, and therefore, were not eligible for overtime. *Compare* AC ¶ 47 (Plaintiff Miranda alleging that while he "consistently works more than 40 hours a week," there were "weeks when he was working less than 40 hours a week."); AC ¶ 34 (Plaintiff Emilia alleging that while he "typically" worked eight hours a day five days per week— *i.e.*, 40 hours—he "sometimes" would "start earlier and/or stay later.") *with Herrera*, 84 F.4th at 115 (holding allegations that "[p]laintiffs' *regularly* scheduled work hours consisted of five shifts *each week*, and that *each* shift lasted between eight and three-quarter hours and nine hours, amounting to between 43.75 hours and 45 hours of work per *regular week*," together with further factual allegations, adequately pleaded an FLSA violation); *Stewart v. Summit Health Mgmt., LLC*, No. 23-CV-04073 (ER), 2024 WL 3274687, at *1 (S.D.N.Y. July 1, 2024) (holding allegations

that "from approximately March 2022 until the end of her employment, [plaintiff] was scheduled to work forty-two hours per week" and was "subject to the same uncompensated, post-shift work— twice a week for 10-15 minutes a day" adequately pleaded an FLSA violation); *Kuck v. Planet Home Lending, LLC*, 354 F. Supp. 3d 162, 168–69 (E.D.N.Y. 2018) ("Here, the Plaintiffs are not merely claiming that they 'occasionally,' 'typically,' or 'regularly' worked more than 40 hours in some weeks," but rather "50-55 hours during *every single week* of their employment. . . . These allegations clearly satisfy the Second Circuit's" precedent. (emphasis added)) (collecting cases); *Brain v. Execu-Search Grp., LLC*, No. 1:22-CV-8219 (MKV), 2024 WL 838085, at *3 (S.D.N.Y. Feb. 28, 2024) (holding allegations that plaintiff worked 45-50 hours "*each and every week*" adequately pleaded an FLSA violation).

Moreover, Plaintiffs Mota and Briganti both allege that "[t]hough it varied," they "generally" worked "approximately 40-50 hours per week." AC ¶¶ 29, 38. Again, as previously noted, "[i]t is not enough to allege that the plaintiff worked in excess of forty hours 'in some or all workweeks.' " *Herrera*, 84 F.4th at 114. More importantly, these allegations suggest that there were weeks during the employment of Plaintiffs Mota and Briganti where they worked 40 hours and not *in excess of* forty hours. AC ¶¶ 29, 38. And yet, employees are only eligible for overtime compensation "for a workweek *longer than* forty hours." 29 U.S.C. § 207(a)(1). In other words, for weeks that Plaintiffs Mota and Briganti worked exactly 40 hours, they would not be entitled to overtime compensation. As pleaded, "[s]uch [] allegation[s] [are] far too vague and unhelpful for putting [D]efendant[s] on notice of the alleged violation." *Herrera*, 84 F.4th at 117.

Accordingly, the allegations in the Amended Complaint are simply too vague and conclusory to allege sufficiently particular facts to state a plausible claim that Plaintiffs Mota, Miranda, Briganti, and Emilia worked compensable overtime in a workweek longer than 40 hours.

As such, the FLSA overtime claims of Plaintiffs Mota, Miranda, Briganti, and Emilia are dismissed for failure to state a claim.

## II.    Plaintiffs' Newly Plead Retaliation Claims Fail to Allege an Adverse Employment Action.

Defendants next move to dismiss Plaintiffs' claims for retaliation brought under the FLSA and NYLL.  Def. Mem. at 8.  The FLSA provides that it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]."  29 U.S.C. § 215(a)(3).  Here, Plaintiffs assert FLSA retaliation claims based, in short, on the fact that Defendants have allegedly offered to rehire several Plaintiffs (who are no longer employed by Defendants) conditioned on their willingness to drop their claims in this lawsuit.  AC ¶¶ 100–08.

As a threshold matter, Defendants argue that Plaintiffs may not base their retaliation claim on "a conditional offer of compromise made in settlement discussions," because such allegations are precluded under Federal Rule of Civil Procedure 408(a).  Def. Mem. at 4.  Rule 408(a) prohibits the admission of "*[e]vidence* of the following . . . to prove or disprove the validity or amount of a disputed claim . . . (1) . . . offering . . . valuable consideration in . . . attempting to compromise the claim[.]" Fed. R. Evid. 408(a)(1) (emphasis added).  "However, the admissibility of documents incorporated in the complaint is irrelevant at the dismissal stage."  *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 540 (S.D.N.Y. 2016) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("The fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal.")).

Moreover, the Court notes that even *if* it analyzed Defendants' evidentiary challenge on the merits, it may not dismiss Plaintiffs' FLSA retaliation claims on this ground.  Although settlement statements are inadmissible to prove liability or amount, they are admissible when the

13

evidence is offered for another purpose. *See* Fed. R. Evid. 408; *Pace v. Paris Maint. Co.*, 7 F. App'x. 94 (2d Cir. 2001). Accordingly, "Rule 408 does not exclude evidence of alleged threats to retaliate for protected activity when the statements occurred during negotiations focused on the protected activity and the evidence serves to prove liability either for making, or later acting upon, the threats." *Pace*, 7 F. App'x. 94; *see also Cerni*, 208 F. Supp. 3d at 540; *Williams v. Regus Mgmt. Grp., LLC*, No. 10 Civ. 8987 (JMF), 2012 WL 1890384, at *4 (S.D.N. Y May 15, 2012) (holding that "statements made in the course of negotiations to settle the underlying discrimination claim" were admissible "to establish the retaliation claim").

Turning to the merits, as a general rule, "[f]ederal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*."[3] *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The Second Circuit has held that this framework applies to retaliation claims under the FLSA and NYLL. *See Wilson v. N.Y. & Presbyterian Hosp.*, No. 21-1971, 2022 WL 17587564, at *1 (2d Cir. Dec. 13, 2022). More specifically, to establish a *prima facie* case of retaliation under the FLSA, a plaintiff must show "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).

Defendants do not dispute that Plaintiffs participated in a protected activity when they filed this FLSA lawsuit in 2022. [ECF No. 1]. Next, the Second Circuit has held that a "refusal to hire" or "failure to hire" may constitute an adverse employment action. *See Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (defining adverse employment action broadly

---

[3] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–03 (1973) (addressing burden-shifting framework for Title VII discrimination and retaliation claims).

to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." (internal citation omitted)).  Here, Plaintiffs allege that "Plaintiffs' non-hire due to their unwillingness to release their wage claims was an adverse employment action" because "but for [Plaintiffs'] decisions to pursue their wage claims, Plaintiffs would have been hired back."  AC ¶¶ 103–05.  Plaintiffs concede however that the Plaintiffs to whom Defendants purportedly offered rehiring had already left their employment years before filing this lawsuit in 2022 and asserting any rights under the FLSA.  *See e.g.*, AC ¶ 40 (Plaintiff Subaran terminated his employment in 2018); AC ¶ 36 (Plaintiff Briganti terminated his employment in 2020); AC ¶ 36 (Plaintiff Emilia terminated his employment in 2021).  In other words, Defendants' alleged conditional offer of employment could not logically be an "*adverse* action," where—in Plaintiffs' own words— Defendants conditionally offered to rehire Plaintiffs who had already left years prior.  *See e.g.*, *Boyle v. McCann-Erickson, Inc.*, 949 F. Supp. 1095, 1104 (S.D.N.Y. 1997) (holding that where a plaintiff "had already been terminated," an "alleged decision" not to hire him for freelance work was not an adverse employment action because it "did not [a]ffect his employment nor hinder him in any way from enforcing his rights."); *Shannon v. Credit Agricole Sec. (USA), Inc.*, No. 17-CV-00667 (AJN), 2021 WL 1063183, at *9 (S.D.N.Y. Mar. 19, 2021) (holding that where plaintiff "had already been terminated" a letter from defendant that it was "willing to keep [plaintiff] employed until the end of February 2013" was "not an adverse employment action" because "the action did not constitute a 'materially adverse change' in the terms and conditions of his employment"); *Penny v. Winthrop–Univ. Hosp.*, 883 F. Supp. 839, 845 (E.D.N.Y. 1995) (denying a plaintiff's motion to amend to add a retaliation claim based on a letter from the defendant offering the plaintiff conditional employment in an effort to settle a grievance regarding her allegedly discriminatory termination because "[i]n the Court's view, if anything, the [] letter constitute[d]

the *opposite of an adverse action*, because it conditionally offer[ed] the plaintiff reinstatement of her already terminated position") (emphasis added); *Madray v. Long Island Univ.*, No. 10-CV-3841 (ADS), 2012 WL 2923500, at *12 (E.D.N.Y. July 16, 2012) (holding defendants' offer to plaintiff of a conditional two-year extension of her discretionary employment and a third opportunity to apply for tenure did "not constitute an adverse employment action" "to serve as a basis for a retaliation claim"). *See also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). Because certain Plaintiffs had not worked for Defendants for, in some cases years, Defendants' conditional offer to rehire those Plaintiffs could not in any way have "[a]ffect[ed] [their] employment" or "constitute[d] a 'materially adverse change' in the terms and conditions of [their] employment." *Boyle*, 949 F. Supp. at 1104; *Shannon*, 2021 WL 1063183, at *9.

In addition, in the context of federal retaliation claims, the Second Circuit has held that to state a retaliation claim based on "failure to hire," a plaintiff must allege that he applied for and was qualified for a job for which the employer was seeking applicants, and he was rejected for the position. *Moy v. Perez*, 712 F. App'x 38, 41 (2d Cir. 2017) (Title VII retaliation claim); *see also Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (Title VII retaliation claim); *Wilson*, 2022 WL 17587564, at *1 (applying Title VII *McDonnell Douglas* framework to retaliation claims under FLSA and NYLL). Nowhere in the Complaint do Plaintiffs allege that they "applied for" the positions upon which they now base their FLSA retaliation claim.

At bottom, Plaintiffs fail to allege any adverse employment action, which affected their *employment*, in support of their FLSA retaliation claim, and, as a result, that claim is dismissed.

### III.    Plaintiffs' Remaining Alleged FLSA
Violations Fail to State a Cognizable Claim.

Under Plaintiffs' first cause of action for various "FLSA Violations," Plaintiffs assert two additional purported violations—namely, "Late Payments" and "Record-Keeping Failures." *See* AC ¶¶ 70–72. While neither party addresses either of these allegations in their briefings, which appear to be styled as separate FLSA claims, the Court addresses each in turn.

#### A.    *There is No Private Right of Action for Record-Keeping Violations.*

First, Plaintiffs allege as a part of their first cause of action that Defendants failed to satisfy certain of the FLSA's "record-keeping" requirements in violation of 29 U.S.C. §§ 211(c), 215(a)(5), and 29 C.F.R. § 516. *See* AC ¶ 72. Under the FLSA, employers "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c). However, the FLSA does not provide a private right of action for recordkeeping violations under Section 211(c). *See* 29 U.S.C. § 216 (providing for liability to employees for violations of separate provisions of the FLSA, but not Section 211); *see also Ayala v. Looks Great Servs., Inc.*, 2015 WL 4509133, at *6 (E.D.N.Y. July 23, 2015) (collecting cases) ("Though a violation is 'unlawful,' courts have repeatedly found that the FLSA does not authorize employees to bring a private action against an employer for failure to abide by the record-keeping requirements of Section 211(c). Rather, that authority is vested exclusively with the Secretary of Labor."); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 425 (S.D.N.Y. 2017) (holding no private cause of action for alleged recordkeeping violations under the FLSA); *Chan v. Big Geyser, Inc.*, 2018 WL 4168967, at *10 (S.D.N.Y. Aug. 30, 2018) (same); *Serebryakov v. Lokeko Inc.*, No. 12 Civ. 3990 (AMD), 2016 WL 5061111, at *1 (E.D.N.Y. Sept. 16, 2016) (same); *Klein v. City of New York*, No. 10 Civ. 9568 (PAE) (JLC), 2011

WL 5248169, at *2, n.1 (S.D.N.Y. Oct. 28, 2011) (same); *Marciano v. SJN Adjustment Grp., Inc.*, No. 18 Civ. 5222 (DLI), 2019 WL 4888569, at *2 (E.D.N.Y. Sept. 30, 2019) (same); *Jimenez v. W&M Servs. Inc.*, No. 22 Civ. 5061 (DLI), 2024 WL 1259359, at *4 (E.D.N.Y. Mar. 25, 2024) (same). Therefore, any claims related to FLSA recordkeeping violations are dismissed.

### B. Plaintiffs' Late Payments Lack Sufficient Particularity to State a Plausible Claim.

Plaintiffs also vaguely allege as a part of their first cause of action that "[o]n at least some occasions," they "did not receive their paychecks on the prescribed paydays, and/or their checks bounced." AC ¶ 70. Plaintiffs allege that, as a result, "[b]ecause [Defendants] failed to pay wages or overtime on the regular payment date, Plaintiffs and other similarly situated workers are entitled to liquidated damages." AC ¶¶ 70–71.

Plaintiffs do not cite to any relevant statutory provisions of the FLSA in support of their "Late Payments" claim. Instead, Plaintiffs cite as support for their late payment claims the Second Circuit decision *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960). In *Klinghoffer*, the Court of Appeals recognized that "[w]hile the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities . . . ." 285 F.2d at 491. "While the statutory language of the FLSA does not prescribe any particular payment schedule, courts have consistently interpreted Section 206(a) of the statute to include a prompt payment requirement." *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 352 (S.D.N.Y. 2014) (citing 29 U.S.C. § 206(a)); *see also, e.g.*, *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 56 (2d Cir. 1998) ("it is clear that the FLSA requires wages to be paid in a timely fashion"); *Klinghoffer*, 285 F.2d at 491.

Indeed, similar considerations were contemplated by New York's legislature in devising NYLL Section 191, whose legislative purpose is to protect workers who are generally "dependent

upon their wages for sustenance." *Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC*, 681 F. Supp. 3d 58, 73 (W.D.N.Y. 2023) (quoting *Sheehy v. Big Flats Community Day*, 73 N.Y.2d 629, 543 N.Y.S.2d 18, 541 N.E.2d 18 (1989)). The NYLL has identified "manual workers" as class of individuals who "shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." NYLL § 191 (1)(a)(i). "Therefore, where the FLSA [has] declined to set an exact frequency of pay requirement, the FLSA has allowed states—like New York—to augment protections where necessary, the latter [of] which tracks the spirit of the FLSA." *Cooke v. Frank Brunckhorst Co., LLC*, No. 23-CV-6333, __ F. Supp. 3d __, 2024 WL 2263087, at *6 (E.D.N.Y. May 18, 2024).

Accordingly, courts in this Circuit have found defendants to have violated the FLSA by failing to issue prompt payment pursuant to NYLL Section 191.[4] *See, e.g.*, *Rosenbaum v. Meir*, 658 F. Supp. 3d 140, 147 (E.D.N.Y. 2023) ("This Court recognizes the instant Complaint does not allege overtime claims in violation of the FLSA but rather contends Defendants violated the [the FLSA] by failing to issue prompt payment."); *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-1417 (JLS) (HBS), 2021 WL 3914297, at *4 (W.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021) ("declin[ing] to reject" proposed FLSA untimely payment claims brought by purported manual workers pursuant to Section 191); *see also*

---

[4] "New York courts are currently split as to whether Section 191 . . . confers a private right of action, and the New York Court of Appeals has not yet addressed this question." *Cooke*, 2024 WL 2263087, at *8 (citing *Garcia v. Skechers USA Retail, LLC*, No. 23-CV-1055 (PKC) (JAM), 2024 WL 1142316, at *6 (E.D.N.Y. Mar. 15, 2024)). The majority of courts in this Circuit, however, have held that "based on the current legal landscape, the New York Court of Appeals would" likely find that a late wage claim under Section 191 is privately actionable even if that right is not expressly codified in the NYLL. *Bazinett v. Pregis LLC*, No. 1:23-CV-790 (MAD) (ML), __ F. Supp. 3d __, 2024 WL 1116287 (N.D.N.Y. Mar. 14, 2024); *see also Cooke*, 2024 WL 2263087, at *8; *Urena v. Sonder USA Inc.*, No. 22 CIV. 7736 (VM), 2024 WL 1333012 (S.D.N.Y. Mar. 28, 2024); *Zachary v. BG Retail, LLC*, __ F. Supp. 3d __, 2024 WL 554174, at *5 (S.D.N.Y. Feb. 12, 2024); *Sarmiento v. Flagge Contracting Inc.*, No. 22-CV-9718 (VSB) (JLC), 2024 WL 806137, at *9 (S.D.N.Y. Feb. 27, 2024). Even assuming a late wage claim under Section 191 is privately actionable, the Court finds for the reasons stated, see *infra*, that Plaintiffs have failed to state a claim for late payments under the FLSA, and thus, given the lack of a valid federal claim, need not reach the question of whether a private right of action exists under NYLL Section 191.

*Anzures v. Maredin Rest. Corp.*, No. 22-CV-2798 (EK) (JRC), 2024 WL 1376812, at *15 (E.D.N.Y. Jan. 24, 2024), *report and recommendation adopted*, 2024 WL 1367963 (E.D.N.Y. Apr. 1, 2024) (awarding liquidated damages for failing to issue prompt payment pursuant to Section 191); *Cooke*, 2024 WL 2263087, at *6 (holding at motion to dismiss stage plaintiff adequately alleged that the defendant may be liable under the FLSA's prompt payment requirement).

However, while Plaintiffs' claim for late payments under the FLSA may be legally cognizable, Plaintiffs are still required to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. As previously noted, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiffs entirely fail to do so here. Plaintiffs' bald allegations that "[o]n at least some occasions, Plaintiffs and other similarly situated workers did not receive their paychecks on the prescribed paydays, and/or their checks bounced" and Defendants "failed to pay wages or overtime on the regular payment date" are completely devoid of factual content. AC ¶¶ 70–71. For instance, Plaintiffs do not specify (or even attempt to estimate) on which dates or time frames they did not receive regular payments, how often such alleged late payments occurred, or how late such payments allegedly occurred. As a result, the Court finds that Plaintiffs have failed to plead "sufficient factual matter" to state a claim for late payments under the FLSA, and this claim is dismissed. *Iqbal*, 556 U.S. at 664.

### IV.   The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims.

Plaintiffs also assert various state law claims. *See* AC ¶¶ 76–89, 90–96, 97–99, 109–12. Because, for the reasons outlined above, Plaintiffs' federal law claims are dismissed, the Court does not consider these claims and declines to exercise supplemental jurisdiction over them.

28 U.S.C. § 1367(c)(3); *see also Britton v. Bronx Parent Hous. Network, Inc.*, No. 21-CV-7079 (JPO), 2022 WL 4332735, at*4 (S.D.N.Y. Sept. 19, 2022).   Plaintiffs' state law claims are therefore dismissed without prejudice to renewal in state court.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of the Court is respectfully requested to terminate docket entries 51 and 66 and close this case.

**SO ORDERED.**

**Date:   September 16, 2024**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**